# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL CASE NO. 5:15-cv-00150-MR

| | |
|---|---|
| ALICIA GAYE GREEN, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 12] and the Defendant's Motion for Summary Judgment. [Doc. 15]. As more fully explained below, the Court will grant the Plaintiff's motion and remand this matter.

## I. BACKGROUND

Plaintiff asserts that arthritis in her hands, knees, ankles, back, neck, and joints, along with associated pain, constitute severe physical impairments under the Social Security Act rendering her disabled. [Doc. 10-4 at 2; 4 (Transcript ("T.") at 62; 64)]. On August 6, 2012, the Plaintiff filed an application for a period of disability and disability insurance benefits, alleging an onset date of October 1, 2011. [Doc. 10-3 at 14 (T. at 13)]. The

Plaintiff's claim was denied initially on August 20, 2012 [Doc. 10-4 at 2 to 8 (T. at 62 to 68)], and upon reconsideration on November 26, 2012. [Id. 10-4 at 10 to 17 (T. at 70 to 77)]. At the Plaintiff's request, a video/telephonic hearing was held before an Administrative Law Judge ("ALJ") on April 18, 2014. [Doc. 10-3 at 26 to 62 (T. at 25 to 61)]. The Plaintiff appeared with counsel in Charlotte, North Carolina. Present with the ALJ in Florence, Alabama, was Jewel E.B. Euto, the Vocational Expert ("VE"). [Id.]. On July 14, 2014, the ALJ issued a written decision denying the Plaintiff benefits. [Id. at 14 to 22 (T. at 13 to 21)]. The Appeals Council denied the Plaintiff's request for review on October 20, 2015, thereby making the ALJ's decision the final decision of the Commissioner. [Id. at 2 to 4 (T. at 1 to 3)]. The Plaintiff, having exhausted all available administrative remedies, filed her action in this Court. This case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security

Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2012). The claimant "bears the burden of proving that he is disabled within the meaning of the Social Security Act." English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993). In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

At the first step, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of

3

the claimant. 20 C.F.R. §§ 404.1520, 416.920. If not, the case progresses to the second step where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies or a combination thereof which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id. Third, if a severe impairment is shown and meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. § 404, Appendix 1 to Subpart P, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. Fourth, if the severe impairment does not meet any of the Listings, then the ALJ determines the claimant's residual functional capacity ("RFC") and reviews the physical and mental demands of work done in the past. If the claimant can still perform his/her prior work despite the severe impairment, then a finding of not disabled is mandated. Id. If the claimant has a severe impairment but cannot perform past relevant work, then the case progresses to the fifth step where the burden shifts to the Commissioner.

At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work that exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006) (noting

Commissioner bears evidentiary burden at step five). The Commissioner may meet this burden by relying on the Medical–Vocational Guidelines ("Grids") found at 20 C.F.R. § 404, Appendix 2 to Subpart P, if applicable, or by calling a VE to testify. 20 C.F.R. § 404.1566. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled. Otherwise, the claimant is entitled to benefits. In this case, the ALJ rendered a determination adverse to the Plaintiff at the fourth step.

## IV. THE ALJ'S DECISION

At steps one and two, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date and that she suffers from the following severe impairments: degenerative disk disease of the lumbar spine at L5; mild osteoarthritis of the bilateral wrists, hands and feet; right hip osteopenia; and mild right carpal tunnel syndrome. [Doc. 10-3 at 16 (T. at 15)]. At step three, the ALJ determined that Plaintiff's impairments did not meet or equal one of the Listings. [Id.].

At step four, the ALJ made her determination with regard to the Plaintiff's RFC and concluded that:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). She can occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds. She can stand and/or walk in combination, with normal breaks, for at least six hours during an eight-hour workday and sit, with normal breaks, for up to eight hours during an eight-hour

5

workday. She can occasionally climb ramps and stairs and should never climb ladders, ropes or scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl. She can frequently perform fine and gross manipulations bilaterally. She should avoid concentrated exposure to extreme heat, extreme cold, and working in areas of vibration. She should avoid exposure to industrial hazards including working at unprotected heights and working in close proximity to moving dangerous machinery.

[Id. at 16-7 (T. at 15-6)].

Based upon her RFC determination, the ALJ determined that Plaintiff was able to perform her past relevant work, including: "billing clerk, DOT #214.382-014, sedentary, semiskilled work with SVP 4; sales clerk, DOT #211.462-014, light semiskilled work with SVP 3; and manager of a convenience store, DOT #185.167-910, light, highly skilled work with SVP 7." [Doc. 10-3 at 22 (T. at 21)]. The ALJ indicated that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." [Id.]. Accordingly, the ALJ concluded Plaintiff could perform past relevant work, was not disabled, and therefore denied benefits. [Id.].

## V. DISCUSSION

The Plaintiff presents two arguments as to why the decision of the ALJ should be reversed. First, Plaintiff asserts that the ALJ erred by failing to follow the correct legal standard when arriving at the Plaintiff's RFC

6

determination. [Doc. 13 at 8]. Second, Plaintiff contends the ALJ erred in failing to fully develop the medical record by declining to order a consultative examination and bilateral diagnostic studies of Plaintiff's knees. [Id. at 8]. The Plaintiff argues that these errors render the ALJ's decision infirm and it must, therefore, be reversed and the matter remanded to the ALJ for rehearing. [Id. at 20].

### A. Failure to Follow the Correct Legal Standard.

Residual Functional Capacity is an administrative assessment of "the most" a claimant can still do despite his or her physical or mental limitations. SSR 96-8p; 20 C.F.R. §§ 404.1545(c); 416.945. In assessing a claimant's RFC and thus her ability to work, the ALJ must evaluate all of the claimant's medically determinable physical or mental impairments, together with symptoms such as pain, "based on all the relevant evidence in [the] case record."[1] 20 C.F.R. § 404.1545(a)(1). However, a symptom, like pain, is not a "medically determinable physical or mental impairment" and no symptom by itself can establish the existence of such an impairment. SSR

---

[1] While not mentioned by either party, the ALJ failed to consider all relevant evidence in the record in making an RFC determination. Particularly, the ALJ failed to consider the Plaintiff's diagnosis of chronic pain syndrome. While the ALJ acknowledged, on five separate occasions [Doc. 10-3 at 18; 19; 20 (twice); & 21 (T. at 17; 18; 19 (twice); 20)], that Plaintiff had been diagnosed with chronic pain syndrome, the ALJ never discussed this diagnosis in reaching her RFC determination or in any other meaningful way in the decision. Because the Court is remanding this matter, the ALJ will have the opportunity to revisit this issue.

7

96-4p. In this matter, both parties concede the ALJ found at step 2 that Plaintiff suffered from several severe physical impairments that could be expected to cause pain, notably degenerative disk disease; osteoarthritis of the wrists, hands and feet; right hip osteopenia; and right carpal tunnel syndrome. The Plaintiff's claim of debilitating pain, therefore, was not foreclosed at step two.

In order for pain, however, to be considered in the formulation an ALJ's RFC determination, the claimant's severe physical or mental impairment(s) must reasonably be expected to produce the pain alleged by the claimant. SSR 96-7p. "The regulation thus requires at the threshold a showing by objective evidence of the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant. Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996) (citation and quotation marks omitted). Once this threshold showing is made,

> the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

8

SSR 96-7p.[2] This symptom evaluation process requires a two-step analysis. First, an ALJ can conclude that the objective medical evidence that establishes the existence of an impairment which could reasonably be expected to produce actual pain, *also* substantiates the claimant's statements about the intensity, persistence, or functionally limiting effects of such pain. Second, if she cannot so conclude, the ALJ must make a finding on whether the individual's statements about the intensity, persistence, or functionally limiting effects of pain are corroborated or refuted based on a consideration of the entire case record.

The ALJ, however, failed to follow this standard, instead framing the standard in this way:

> The two-step process first requires evidence of an underlying medical condition; and the second part is two-pronged, requiring (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition and (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain.
>
> The medical evidence shows that the claimant has the above impairments, which meet part one of the two-step process. However, there is no objective clinical evidence of a condition which could reasonably be expected to produce the level of pain,

---

[2] After the ALJ issued her decision, SSR 96-7p was superseded by SSR 16-3 entitled "Title II and XVI: Evaluation of Symptoms in Disability Claims" effective March 28, 2016. SSR 16-3 did not change the process established in the Regulations (and described in SSR 96-7p) for the evaluation of a claimant's symptoms. Instead, SSR 16-3 simply eliminated the use of the term "credibility" from the subregulatory policy, as the Social Security Regulations do not use this term. "In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3.

> fatigue and other symptoms which the claimant alleges have precluded her from working. Neither prong of part two of the standard is met, since the objective evidence does not confirm either the severity of the claimant's alleged symptoms arising from her medically documented conditions, or that those conditions could reasonably be expected to give rise to the symptoms alleged by the claimant.

[Doc. 10-3 at 17 (T. at 16)].

The ALJ's articulation of the standard is inconsistent with Craig. The ALJ begins by observing that the Plaintiff must (and does) possess the severe physical impairments which could reasonably be expected to produce the pain she alleges. "The medical evidence shows that the claimant has the above impairments, which meet part one of the [ ] process." [Id.]. This is the "threshold" showing required by Craig, 76 F.3d at 595. Next, in beginning her symptom analysis, the ALJ correctly observed, in applying the standard that she is called upon to determine, whether she could conclude that the objective medical evidence also substantiated the claimant's statements about the intensity, persistence, or functionally limiting effects of such pain. [Doc. 10-3 at 17 (T. at 16) (standard may be met by "objective medical evidence that confirms the severity of the alleged pain arising from that condition")]. The remainder of the ALJ's symptom analysis, however, is erroneous for two reasons, which in turn, kept the ALJ from performing a proper RFC assessment for Plaintiff.

10

First, the ALJ stated that the Plaintiff is required to prove **both:** (1) "objective medical evidence that confirms the severity of the alleged pain arising from that condition **and** (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain." [Doc. 10-3 at 17 (T. at 16) (emphasis added)]. As explained above, however, the SSR 96-7p symptom analysis standard only requires a claimant to prove one or the other.³

Second, the ALJ erroneously articulated the second prong of the SSR 96-7p analysis. The second prong of the SSR 96-7p directs the ALJ to compare the claimant's statements about the intensity, persistence, or functionally limiting effects of her pain with a consideration of all of the facts contained in the claimant's entire case record. Rather than properly stating this standard, the ALJ substituted the Craig "threshold" determination in lieu of the second prong of the SSR 96-7p standard. Due to this error, the ALJ never engaged in the comparison required by the second prong of SSR 96-7p. As such, there was no exploration by the ALJ of the entire case record (including non-medical evidence) and then no assessment by her of whether

---

³ Later in her decision, the ALJ corrected the conjunctive to disjunctive mistake described here. [Doc. 10-3 at 21 (T. at 20)]. The ALJ did not, however, correct her improper articulation of the second prong of the symptom analysis applicable to Plaintiff, which is the more critical error described infra. [Id.].

11

any facts, signs, or other laboratory findings therein substantiated the Plaintiff's statements about the intensity, persistence, or functionally limiting effects of her pain.  Because of this deficiency, the ALJ's symptom analysis is incomplete and the matter must be returned to the ALJ so that she may address this necessary second component of the SSR 96-7p standard.

The ALJ's errors, with regard to properly assessing the Plaintiff's symptom of pain, were not merely confined to whether the evidence of her physical impairments supported her claims of pain. The ALJ failed to take the next step and assess how (or if) such pain affected Plaintiff's *functionality*.  In short, the ALJ's errors in complying with SSR 96-7p standard gave rise to the ALJ adopting an RFC without first engaging in a function-by-function analysis of Plaintiff's severe medical impairments **and** associated pain.

In determining a claimant's RFC, in which symptom analysis is an integral component, the ALJ must first identify the claimant's functional limitations or restrictions and then assess the claimant's work-related abilities on a *function-by-function basis*.  SSR 96-8p (emphasis added). This Ruling explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and

nonmedical evidence (e.g., daily activities, observations). … Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id.

In this matter, the ALJ failed to conduct a function-by-function analysis of Plaintiff's work-related abilities prior to expressing her RFC determination. This, standing alone, is grounds for remanding the matter. See Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (holding that ALJ's failure to conduct a function-by-function analysis provides basis for remand). The ALJ failed to conduct a function-by-function analysis because she was laboring under an improper articulation of the second prong of the symptom analysis standard rendering her RFC determination inadequate, which also requires remand. Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016) (holding remand may be appropriate when an ALJ fails to assess a claimant's capacity to perform relevant functions where inadequacies in the ALJ's analysis frustrate meaningful review). This matter must, therefore, be returned to the ALJ to remedy these inadequacies.

Upon reconsideration, the ALJ should first assess Plaintiff's statements concerning her symptoms of pain to determine the limiting extent of her pain pursuant to SSR 96-7p. Then, having made that determination, the ALJ should conduct a function-by-function analysis, taking into account the

13

Plaintiff's level of pain in conjunction with all of the evidence in the record. This should yield an RFC determination expressed in terms of the exertional levels of work Plaintiff may undertake or her ability to work at all. As cautioned by the Fourth Circuit, "[w]e have explained that expressing the RFC before analyzing the claimant's limitations function by function creates the danger that the adjudicator will overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do." Monroe, 826 F.3d at 187 (citations and formatting alterations omitted). In expressing a RFC determination before conducting a function-by-function analysis, an ALJ improperly places the cart before the horse. For these reasons, the Court concludes this matter must be remanded to the ALJ for her to conduct a more robust symptom analysis, one "build[ing] an accurate and logical bridge from the evidence to [her] conclusion" about Plaintiff's proper RFC determination. Monroe, 826 F.3d 189 (citation omitted).

### B. Failure to Fully Develop the Medical Record.

As her second basis for remand, the Plaintiff contends the ALJ erred in failing to fully develop the medical record by declining to order a consultative examination and bilateral diagnostic studies of Plaintiff's knees. [Doc. 13 at 8]. In addition to the osteoarthritis of her wrists, hands, and feet, the Plaintiff's claim included symptoms of extreme knee pain. After Plaintiff's

14

claim was denied initially on August 20, 2012, the Plaintiff requested a consultative examination and x-rays of her knees. [Doc. 10-7 at 19 (T. at 222)]. When her case progressed to the stage of a hearing before an ALJ, the Plaintiff testified that her knee pain is what initially prompted her to seek medical treatment and thereafter disability benefits:

**Examination of Claimant by Counsel**

Q: When you filed this application, you indicated you became unable to work in October 2011.

A: Yes, sir.

Q: What happened around that time to make you feel that you're unable to work?

A: My knees starting hurting me constantly. I couldn't stand cold. I had to keep them -- if I was in the house, I had to keep them covered up. I couldn't stand any cold touching me. And my fingers, my hands started hurting. Little knots started coming up on them.

Q: Okay.

A: And then I snap, crackle, and pop every time I get up.

Q: And in terms of your knees, are they both about the same, or is one knee worse than the others -- the other?

A: The right knee hurts worse than the left.

* * * * * * * * * * * * *

Q: What if anything makes the pain in your knees worse?

A: If I'm standing on them a lot, using my -- you know, doing the normal housework. If I'm up and down a lot, I can sit and stretch a little bit, and they'll ease up a little bit.

Q: Okay. And you just used one of those words that the judge doesn't want you to, "a lot."

A: Oh, yeah.

Q: So how long are you able to be up on your feet?

A: If I -- usually about an hour -- 30 minutes to an hour. And then it -- that really -- pain starts hurting, and I'll sit down for about 15 minutes. And then I get up and go at it again.

Q: Okay. And can you do that off-and-on throughout the day: stand for 30 minutes to an hour, then rest 15 minutes, then do it again, and again, and again?

A: I can do it, but I pay for it at night. I -- it hurts into my back really if I over-extend myself in the – in the day. I pay for it at night with the pain.

[Doc. 10-3 at 37 to 39 (T. at 36 to 38)].

Following the Plaintiff's explanation of the symptom of pain in her knees, she was questioned by the ALJ about the same:

**Examination of Claimant by Administrative Law Judge**

Q: Ms. Green, you're alleging disability as of October the 1st of 2011, but you didn't seek any medical treatment until 2012. And that was in August of 2012, so almost a full year later treatment? So why the delay in going to get …

A: I didn't have insurance, and …

Q: Do you have insurance now?

A: I do.

Q: So when you went to see the doctor in August of 2012, did you actually have medical insurance then?

A: No, ma'am, not at the time, I did not. And it was a little expensive, but it -- my pain got so bad that I had to have something done. I was taking Tylenol. That didn't help. And I would take Aleve, and that didn't help. So I went to the doctor, and she gave me a prescription for some pain relievers, and it helped. So up until this past March, I had no insurance, and I was paying out-of-pocket to go to the doctor and for prescriptions.

Q: Okay. And counsel, are there any diagnostic scans of her knees in the file? I didn't see any. I've got back, arms, feet, wrist, hands. I've got EMG studies, but I honestly didn't -- I've got cervical spine, lumbar spine, but I really didn't see the knees. Do I have anything on the knees?

ATTY: No, your honor.

**Examination of Claimant by Administrative Law Judge**

Q: They skipped your knees, Ms. Green?

A: They did. I don't know why. When I first -- when he first gave me my first physical exam, I don't know why they did not do the knees.

Q: Okay, because that was one of your first complaints, was it not?

A: Yes. Yes, it was.

Q: And they didn't even x-ray that. At what point in time did your knees become so painful?

A: They have been bad for quite some time before that, in I've lost track of even when it was -- 2010, I guess, I started having a

> little bit of problems. And then it progressively got worse, and the pain just got so bad I had to go to the doctor with it.

[Doc. 10-3 at 46 to 48 (T. at 45 to 47)].

The Court need not now resolve the Plaintiff's contention that the ALJ erred in failing to fully develop the medical record because this matter is being returned to the ALJ. In revisiting the issue of whether to order a consultative examination and bilateral diagnostic studies of Plaintiff's knees, the ALJ should consider 20 C.F.R. § 404.1545(a)(3), which states, in pertinent part,

> We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity. (See § 404.1512(c).) <u>However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary</u>, and making every reasonable effort to help you get medical reports from your own medical sources.

Id. (emphasis added). Following the remand of this matter – and given the primacy of the Plaintiff's complaint about her symptom of knee pain – the ALJ will have the opportunity to reconsider this issue before she reformulates her RFC determination as ordered herein.

## VI. CONCLUSION

The ALJ erred by failing to follow the correct legal standard when arriving at the Plaintiff's RFC determination. SSR 96-7p; Bird, 699 F.3d at

18

340. Accordingly, the Court concludes that this matter must be remanded. On remand, the ALJ should also reconsider whether to develop the medical record more fully by ordering a consultative examination and bilateral diagnostic studies of Plaintiff's knees. Thereafter, the ALJ must assess Plaintiff's statements concerning the limiting effects of her symptoms of pain in the context of a function-by-function analysis using all of the evidence in the record, and then express an RFC determination in terms of the exertional levels of work Plaintiff may undertake or her ability to work at all.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 12] is **GRANTED**, and that the Defendant's Motion for Summary Judgment [Doc. 15] is **DENIED**. Pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and this case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: March 7, 2017

Martin Reidinger
United States District Judge